IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

00 FEB 24 PM 3: 10

CALVIN JACKSON,

        Plaintiff,

vs.

GARY JOHNSON, Governor of New Mexico,
ROBERT J. PERRY, Secretary of Corrections,
JOHN SHANKS, Director of Adult Prisons,
DONNA WILPOLT, Deputy Corrections Secretary,
JERRY TAFOYA, Deputy Corrections Secretary,
JEFF SERNA, Interstate Compact Coordinator,

CIV 00    0268

RICHARD L. PUGLISI

and

WACKENHUT CORRECTIONS CORPORATION,
GUADALUPE COUNTY CORRECTIONAL FACILITY,
GUADALUPE COUNTY, NEW MEXICO,
ELOY MONDRAGON, Former Warden,

and

RONALD ANGELONE, Virginia Corrections Director,
STANLEY K. YOUNG, Wallens Ridge State Prison Warden,

        Defendants.

## COMPLAINT FOR VIOLATIONS OF CONSTITUTIONAL RIGHTS

Plaintiff Calvin Jackson presents the following Complaint seeking relief from Defendants' denial of Plaintiff's civil rights, stating as follows:

1. Plaintiff is **Calvin Jackson**. At the end of August, 1999, Plaintiff was a prisoner in "E-Pod" at the Guadalupe County Correctional Facility, the Wackenhut Corporation prison in Santa Rosa, New Mexico.

2. Defendants are **Gary Johnson**, New Mexico Governor; **Robert J. Perry**, Secretary of Corrections; **John Shanks**, Acting Deputy Secretary and Director of Adult Prisons; **Donna Wilpolt**, Deputy Secretary; **Jerry Tafoya**, Deputy Secretary; and **Jeff Serna**, the Interstate Compact Coordinator.

3. Defendants include the **Wackenhut Corrections Corporation** and **Eloy Mondragon,** Former Warden of the **Guadalupe County Correctional Facility,** a Wackenhut Corporation Prison in Santa Rosa, New Mexico and **Guadalupe County, New Mexico**.

4. Defendant **Ronald Angelone** is the Virginia Corrections Department Director and **Stanley K. Young** is the Warden of Wallens Ridge State Prison.

5. Defendants Gary Johnson, Robert Perry, John Shanks, Donna Wilpolt, Jerry Tafoya, Jeff Serna, Eloy Mondragon, Ronald Angelone, and Stanley Young are sued in their individual as well as their official capacities. The individually named Defendants are alleged to have had individual involvement in the acts and omissions described herein.

6. Jurisdiction of the Federal Court is invoked pursuant to the Court's federal question jurisdiction under 42 USC Sections 1983, 1985, 1986, and the laws and Constitutions of the United States and the State of New Mexico.

## FACTUAL ALLEGATIONS

7. On September 3, 1999, Defendants transferred Plaintiff and other minimum and medium security prisoners from Santa Rosa, New Mexico, to Wallens Ridge State Prison in Big Stone Gap, Virginia, a Supermax Prison, as punishment for alleged participation in the killing of a guard and a riot at the prison in Santa Rosa on August 31, 1999.

8. Plaintiff did not participate in the killing of the guard or the riot.

9. Although Defendants have generally accused Plaintiff and others of participating in the riot at Santa Rosa, they have not charged Plaintiff with any misconduct, given him notice of charges, or held a hearing.

10. By August, 1999, the provision of correctional services at the Guadalupe County Correctional Facility was far beneath reasonable standards of corrections management and operations.

11. The classification and disciplinary systems were not functioning, proper records were non-existent, and crucial security threats were being ignored. Prison guards were overworked, under-trained and underpaid. The Guadalupe County prison was built with serious design flaws and Defendants Perry and Johnson had created additional

problems by ordering the removal or restriction of certain prison "amenities" from the new private prisons in Santa Rosa and Hobbs.

12. On or around August 26, 1999, following serious incidents of violence at other private prisons in the State, Governor Gary Johnson publicly expressed concern about the disparity between public and private corrections facilities.

13. According to Governor Johnson and Corrections Secretary Perry, prisoners at private prisons who were involved in violent incidents were being sent back to the State-run prisons where living conditions were more comfortable. Governor Johnson announced a new policy of sending such prisoners out-of-state instead.

14. On or around August 27, 1999, the Corrections Department Defendants posted a Notice informing inmates that "Any further incidents of violence will result in the transfer of inmates to out-of-state facilities."

15. On the evening of August 31, 1999, a prisoner attacked another prisoner in the Gym at the Santa Rosa prison and the inmates were ordered to return to their units. Plaintiff was in his cell in E-Pod when other prisoners attacked the guard. He and his cell-mate remained locked in their cell while fires were set in the housing unit.

16. Late that night Plaintiff and the other prisoners in E-Pod were searched, restrained, and ordered to remain locked in their cells. Early the next morning the Plaintiff was stripped and his possessions and clothes were taken. A guard took Plaintiff's wristwatch from him After being photographed Plaintiff and the others were given paper suits to wear.

17. The next day, September 1, 1999, Corrections Secretary Perry issued a press release promising that "I will have a firm and swift response to this incident."

18. The Wackenhut and Guadalupe County Defendants placed Plaintiff and others in cold cells in a previously unused part of the prison without any running water or mattresses. At about 9 p.m. that night mattresses were distributed.

19. The next morning, September 2, the prisoners were fed sack lunches and later that day the prisoners were given blankets and the water was turned on.

20. Early on the morning of September 3, 1999, Santa Rosa prison guards placed Plaintiff on a bus. He was chained around the waist, handcuffed, and had shackles on his ankles. Around 3 a.m. a convoy of about 20-vehicles left Santa Rosa for Albuquerque.

21. Following a wait of several hours in buses on the runway at Kirtland Air Force Base, Plaintiff and the other Santa Rosa prisoners were loaded by federal marshals into an airplane for a three-hour trip. Upon their arrival at a small Tennessee airport the prisoners were forced to wait for hours without drinking water in hot vans with windows sealed shut.

22. On September 3, 1999, Corrections Secretary Perry announced:

> . . . . the immediate transfer of approximately 120 inmates incarcerated at the Guadalupe County Correctional Facility in Santa Rosa, to the Wallens Ridge Correctional Facility in Big Stone Gap Virginia.
>
> . . .
>
> The 120 inmates are the individuals from housing unit one, pods A & E, who participated in Tuesday nights' riot that resulted in the vicious killing of Correctional Officer Ralph Garcia.

Perry also announced that:

> The Wallens Ridge Correctional Facility is a Super Max Level 6 Prison, one of only two in the nation. The 120 inmates from GCCF will remain at Wallens Ridge Correctional Facility indefinitely. While at WRCF the inmates will be locked down for most of the day, programmed in their cells, and under the constant supervision of Correctional Officers armed with 12 gauge combat shotguns.

23. The State of Virginia had recently opened its two new Supermax Prisons, Wallens Ridge and Red Onion. Those prisons were designed and intended to confine, control, and punish the worst and most violent prisoners in the country.

24. The prisoners were kept in vans near the Wallens Ridge Prison doors for over four hours. They were not allowed to speak. Guards shouted taunts and threats. As they took Plaintiff into the Wallens Ridge Prison guards hurt and physically injured Plaintiff.

25. Upon his arrival at Wallens Ridge prison guards began calling Plaintiff "Water Boy." They continued taunting him and calling him "Water Boy" throughout the time he spent at Wallens Ridge.

26. At Wallens Ridge Plaintiff was immediately placed and held in a Segregation Unit. Defendants kept Plaintiff in a small cell and denied him any meaningful programs or activities, denied opportunity for exercise and recreation, denied any medical or psychological attention, denied access to books or law library, denied telephone calls and other human contacts, unreasonably and cruelly humiliated and threatened Plaintiff, and in many respects

subjected him to conditions of control and confinement which were far different and more oppressive than any of Plaintiff's prior New Mexico prison experiences.

27. At Wallens Ridge Plaintiff was subjected to extraordinarily harsh and degrading measures, including absolute denial of privacy, strict control and limitation of movement, removal of social contact, absence of meaningful activity, sensory deprivation and behavioral modification, and continual threats from electroshock weapons, chemical sprays, firearms, shotguns, police dogs and other methods of control and discipline.

28. During his first five weeks at Wallens Ridge Plaintiff was never allowed out of his cell without first being stripped, searched, shackled, chained, and handcuffed.

29. For the first five weeks of his confinement at Wallens Ridge Plaintiff was allowed to do nothing and was allowed to speak to no one.

30. At Wallens Ridge Plaintiff was forced to live in a state of constant fear for his life, unlike anything Plaintiff ever felt before.

31. Throughout his time at Wallens Ridge State Prison Plaintiff was continually subjected to vile racial threats and epithets from prison guards.

32. At the time of his transfer and placement in segregation at Wallens Ridge Plaintiff was not a gang member, he was not an escape risk, he had not engaged in any violent activity in or out of prison, and he was not a troublemaker of any sort.

33. Defendants have not given Plaintiff any reason or explanation for sending him to Wallens Ridge and confining him in the Segregation Unit.

34. Plaintiff was returned from Wallens Ridge Prison to the prison in Santa Rosa, New Mexico along with four other prisoners on or around January 14, 2000, by private transport van.

35. Prior to boarding the van for the trip back to New Mexico, Wallens Ridge guards placed handcuffs and ankle chains on Plaintiff which were excessively tight. Because the transport officers were unable to loosen the chains and cuffs for the first part of the trip back to New Mexico, Plaintiff suffered extreme discomfort and pain.

36. The significant hardships and brutal conditions of confinement at Wallens Ridge State Prison were, with respect to Plaintiff, entirely without penological justification.

37. Plaintiff is presently incarcerated again at the Guadalupe County prison in Santa Rosa, New Mexico.

38. Conditions at the prison in Santa Rosa are now as bad or worse than they were six months before, when Defendants sent Plaintiff to Wallens Ridge. Prisoners of all classifications, from minimum to maximum, are presently housed in the same housing units at the prison and the potential for more prison violence is apparent and ever-present.

## COUNT 1

### VIOLATIONS OF THE RIGHT TO DUE PROCESS

39. After the inmate disturbance at Santa Rosa, the New Mexico Corrections Department and Wackenhut Defendants selected Plaintiff and others for transfer to the prison in Virginia without regard for whether or not he had participated in any misconduct

at Santa Rosa, without conducting any investigation, without stating any valid reason or justification, and without holding any hearing.

40. Without reason or justification, Defendants arbitrarily and unreasonably selected or approved the selection of Plaintiff for transfer and Supermax imprisonment in Virginia.

41. Defendants' transfer of Plaintiff to Virginia in chains and shackles, his placement in segregation in a super maximum confinement prison, and the imposition of cruelly restrictive conditions of confinement constitute atypical and significant hardships and deprivations of Plaintiff's rights and interests.

42. Defendants' acts and omissions and their treatment of Plaintiff described herein violate commonly accepted norms of human, social, personal, and official conduct and behavior, and constitute human rights violations which are truly unconscionable and offensive to the concept of ordered liberty.

43. Despite his sentence of confinement, Plaintiff has a remaining liberty interest which Defendants have denied or seriously compromised by their acts and omissions.

44. Defendant prison officials and Governor Johnson have shown a clear pattern and practice of deliberate and knowing indifference to the sadistic and malicious acts of imprisonment and brutality described herein as well as their failure to provide even minimal due process of law.

45.     Defendants have violated Plaintiff's right to procedural and substantive due process of law and are liable for the damages caused by their violations of Plaintiff's constitutional rights.

## COUNT 2

### VIOLATIONS OF THE RIGHT TO BE FREE
### OF CRUEL AND UNUSUAL PUNISHMENT

46.     The preceding allegations and claims are adopted.

47.     At the time Defendants transferred Plaintiff to Wallens Ridge, Plaintiff was a non-violent individual who had no disciplinary infractions or misconduct on his prison record.

48.     By subjecting Plaintiff to the most harsh and extreme conditions of confinement and punishment and by the mistreatment of Plaintiff described herein, Defendants have cruelly and unusually inflicted punishment that goes far beyond the bounds of any acceptable or necessary conduct.

49.     New Mexico and Virginia corrections officials acted with indifference concerning the use of extreme and unreasonable punishment. Even after receiving reports of abusive treatment of New Mexico prisoners, corrections officials, they failed to take any actions to investigate or punish corrections officers for engaging in excessive use of force or other misconduct against prisoners, including intense and overt racism and demonstrations of inhumanity.

50. Defendants were fully aware that Plaintiff had nothing to do with the killing of the guard at Santa Rosa or the disturbance that followed. They also knew, and it was clearly foreseeable, that sending Plaintiff and other minimum and medium security prisoners like him to a Supermax penitentiary would inflict unreasonable and serious emotional harm and damage on the prisoners.

51. Defendants are liable for any and all damages, including but not limited to damages for mental and emotional distress and physical pain and suffering, caused by their infliction of cruel, unusual, and undeserved punishment on Plaintiff.

## COUNT 3

### VIOLATIONS OF THE RIGHT TO BE FREE OF UNREASONABLE SEARCHES AND SEIZURES

52. The preceding allegations and claims are adopted.

53. Throughout the time he was transported to and from Wallens Ridge State Prison and while he was at Wallens Ridge, Plaintiff was forced to submit to continual strip searches and other body searches. He was repeatedly and painfully restrained, shackled, handcuffed, and required to endure long periods of distress and discomfort.

54. Defendants forced Plaintiff to submit to numerous strip searches, especially while in the Segregation Unit, where prisoners are searched every time they leave their cell. A Wallens Ridge memo details the procedure:

> Any time a strip search is conducted the inmate will be required to strip off all his clothing, turn around slowly, put his hands on his buttocks, spread his buttocks, squat to the ground while buttocks is still spread, and cough hard twice.

This procedure will be followed any time a segregation inmate leaves his cell for any reason. There will be no exceptions to this procedure.

(EXHIBIT 1).

55. By their policies, procedures, acts, and omissions, Defendants knowingly, deliberately, and unreasonably removed and denied the residuum of privacy and personal rights retained by Plaintiff following his conviction and sentencing.

56. Defendants are liable for any and all damages resulting from their, and their agents and employees', violations of Plaintiff's fundamental right to be free of unreasonable, unwarranted and unjustified searches and seizures.

## COUNT 4

### VIOLATIONS OF THE RIGHT TO BE FREE OF THE INCIDENTS OF SLAVERY

57. The preceding allegations and claims are adopted.

58. Plaintiff is a 48-year old African-American; he was taken from his ordinary term of imprisonment in New Mexico, transported in chains and shackles without a hearing to a Super Maximum Security prison in Virginia, where he was isolated and repeatedly and unnecessarily restrained, searched and threatened and subjected to injury, pain, and physical and mental abuse.

59. Defendants have severely limited Plaintiff's movement, associations, and activities and have subjected Plaintiff to unusually cruel and unreasonable punishment and

conditions of confinement in violation of the Thirteenth Amendment to the United States Constitution.

## COUNT 5

## VIOLATION OF INTERSTATE COMPACT

60. The preceding allegations and claims are adopted.

61. On September 3, 1999, New Mexico Corrections Secretary Perry and Virginia Corrections Director Angelone entered into a Memorandum of Understanding Between the Virginia Department of Corrections and the New Mexico Department of Corrections allowing the transfer of the New Mexico prisoners to Wallens Ridge State Prison. (EXHIBIT 2).

62. Defendants have entered into an interstate compact and contracts and understandings among Wackenhut Corporation, Guadalupe County, the New Mexico Department of Corrections, and the Virginia Department of Corrections.

63. The compact, codified as State law at 31-5-17 NMSA (2000), provides that inmates sent to another state's institutions "shall be treated in a reasonable and humane manner . . . . ."

64. The compact further provides that confinement in another state "shall not deprive any inmate so confined of any legal rights which said inmate would have had if confined in an appropriate institution of the sending state."

65. Defendants have breached the provisions of the interstate compact by failing to treat Plaintiff and others "in a reasonable and humane manner" and by failing to provide Plaintiff with the same rights he "would have had if confined in an appropriate institution" in New Mexico.

66. Plaintiff has been damaged as a result of Defendants' breach of the interstate compact and Defendants are liable to Plaintiff for damages sustained as a proximate result of their conduct.

## COUNT 6

## CONSPIRACY, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, AND EXEMPLARY AND PUNITIVE DAMAGES

67. The preceding allegations and claims are adopted.

68. Defendants' conduct described herein was willful, wanton, deliberate, malicious, and was intended to punish and inflict pain and emotional harm upon Plaintiff and others like him for acts he did not commit.

69. Defendants met, conversed, planned, and arranged between and among themselves and with their subordinates to execute the transfer and punishment of Plaintiff and the other New Mexico prisoners at Wallens Ridge State Prison.

70. Defendants acted among and between themselves with gross and deliberate indifference and disregard for Plaintiff's rights and interests. Defendants are liable to Plaintiff for damages proximately resulting from their acts and omissions.

71. Defendants have exhibited a pattern and practice of deliberate and utter indifference for excessive, brutal, and malicious use of force, cruel, unusual, and excessively harsh conditions of confinement, arbitrary and unreasonable commitment to solitary confinement, sensory deprivation and behavior modification, with the result that Plaintiff has suffered serious physical and emotional damage, pain, and suffering.

72. Defendants have acted with deliberate and utter indifference for the rights of Plaintiff and others like him; their conduct in this case is shocking and egregious.

73. Plaintiff is entitled to an award of exemplary and punitive damages to deter and prevent Defendants and others from committing such extreme and constitutionally offensive acts in the future.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the award of the following relief:

A. Declaratory and compensatory relief for damages resulting from violations of Plaintiff's liberty interests and rights to due process of law, including but not limited to damages for pain and suffering and emotional distress.

B. Declaratory and compensatory relief for damages resulting from violations of Plaintiff's right to be free of unreasonable searches and seizures, cruel and unusual punishment, and the incidents of slavery.

C. Declaratory and compensatory relief for damages resulting from violations of the interstate compact and other agreements among the parties.

D. An Injunctive Order requiring Defendants to provide counseling, therapy, treatment, and care necessary to restore Plaintiff to the physical and psychological condition he was in prior to the occurrences described herein and to treat him for both the immediate and the long-term effects of his experience.

E. Exemplary and punitive damages to discourage and prevent such and similar acts by Defendants and others in the future in the amount of at least One Million Dollars.

F. Costs of this action and reasonable attorneys' fees.

G. Such other and further equitable or legal relief as the Court deems just, proper, and necessary.

Respectfully submitted,

_____
Paul Livingston
Attorney for Calvin Jackson
P.O. Box 90908
Albuquerque, NM 87199
(505) 823-4410


WALLENS RIDGE STATE PRISON

# Memo

**To:** INMATE POPULATION
**From:** MAJOR T. YATES
**Date:** 11/12/99
**Re:** STRIP SEARCH PROCEDURE

LATELY THERE HAS BEEN SOME CONFUSION ABOUT THE STRIP SEARCH PROCEDURE HERE AT WALLENS RIDGE STATE PRISON. THIS MEMO WILL CLEAR UP ANY QUESTIONS YOU MAY HAVE ABOUT THIS PROCEDURE.

ANY TIME A STRIP SEARCH IS CONDUCTED THE INMATE WILL BE REQUIRED TO STRIP OFF ALL HIS CLOTHING, TURN AROUND SLOWLY, PUT HIS HANDS ON HIS BUTTOCKS, SPREAD HIS BUTTOCKS, SQUAT TO THE GROUND WHILE BUTTOCKS IS STILL SPREAD, AND COUGH HARD TWICE.

THIS PROCEDURE WILL BE FOLLOWED ANY TIME A SEGREGATION INMATE LEAVES HIS CELL FOR ANY REASON. THERE WILL BE NO EXCEPTIONS TO THIS PROCEDURE.

MAJOR T. YATES

Plaintiff's
**EXHIBIT 1**

# MEMORANDUM OF UNDERSTANDING BETWEEN THE VIRGINIA DEPARTMENT OF CORRECTIONS AND THE NEW MEXICO DEPARTMENT OF CORRECTIONS

DATE: 9-3-99

It is hereby directed that up to one hundred twenty five (125) inmates, as identified on the attached transfer memorandum, who are New Mexico Department of Corrections inmates that are currently incarcerated at the Guadalupe County Correctional Facility, be transferred to the custody of the correctional system of the State of Virginia, pursuant to the provisions of the Interstate Corrections compact as provided under Sections 53.1-216 and 53.1-217 of the Code of Virginia and Sections 31-5-17 and 31-5-18 of the New Mexico Statutes Annotated 1978, and under the existing Contract between the State of New Mexico and the State of Virginia For The Implementation of the Interstate Corrections Compact dated December 7, 1982 (specifically Section 27 of the Contract). These inmates are to be delivered to the custody of Virginia at the following location: The Wallens Ridge State Prison located near Big Stone Gap, Virginia.

The parties agree that for the purposes of this Memorandum that the Commonwealth of Virginia shall defend, at its expense, any claim arising from the conditions of confinement in Virginia Department of Corrections facilities and all excessive force and failure to protect claims brought by any inmates housed in any Virginia Department of Corrections facility; that the State of New Mexico shall be responsible for defending, at its expense, all legal proceedings, including but not limited to, actions brought against Virginia Officials relating to a New Mexico Inmate's conviction or sentence, any action arising out of the transfer per se of a New Mexico Inmate to a Virginia facility; and any suit brought against any New Mexico defendant; and that the New Mexico Corrections Department and Virginia Department of Corrections agree to fully cooperate with each other in defense of any action brought by a New Mexico Inmate or pertaining to a New Mexico Inmate.

Pursuant to Section 27 of the existing Contract, New Mexico shall pay the Commonwealth of Virginia a per diem of $64.00 per day per inmate. All other terms and conditions of the referenced existing Contract between the State of New Mexico and the State of Virginia shall apply. The term of this transfer is for up to one year, with the understanding that the transfer may last less than one year.

_____ (name)
ROBERT J. PERRY
CABINET SECRETARY (title)
New Mexico Corrections Department

_____ (name)
Ron Angelone
Director (title)
Virginia Department of Corrections

Subscribed and sworn before me, a Notary Public, in and for the State of Virginia, this 3rd day of September 1999.

My Commission Expires:

Virginia Interstate Compact 9-99
Page 1

Plaintiff's
**EXHIBIT 2**

SEP 03 1999 09:45 FR DIRECTORS OFFICE

MEMORANDUM OF UNDERSTANDING BETWEEN
THE VIRGINIA DEPARTMENT OF CORRECTIONS AND
THE NEW MEXICO DEPARTMENT OF CORRECTIONS

_____
Notary Public

03-31-2002

Subscribed and sworn before me, a Notary Public, in and for the State of New Mexico, this _2nd_ day of _September_, 1999.

My Commission Expires:

_3-30-2001_

_Barbara H Murphy_
Notary Public

**Custody Transfer Certification:**

Custody of inmates received:

_____     _____     _____
(Print Name)                Signature                   Date

Witnessed by New Mexico Transporting Official:

_____     _____     _____
(Print Name)                Signature                   Date

Distribution:
Original to Unit Manager, Absconder and Extradition Unit, then to CCR
Institutional Criminal Record
Compact Coordinator
Designated Reception Center (when receiving inmates)
W#9, TR